1

Honorable Marsha J. Pechman

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT,**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9

10

11

DOMAINTOOLS, LLC, a Delaware limited
liability company,

NO. 2:12-cv-00498-MJP

12

Plaintiff,

**PLAINTIFF DOMAINTOOLS,
LLC'S RESPONSE TO
DEFENDANTS' MOTION TO
DISMISS**

13

v.

14

RUSS SMITH, an individual, and
CONSUMER.NET, LLC, an unknown entity,

**ORAL ARGUMENT REQUESTED**

15

16

Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 1

**NEWMAN | DU WORS**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  FACTUAL BACKGROUND ................................................................................2

   A.   DomainTools' Seattle-based online records archival business and website. 2

   B.   Defendant Smith threatened to sue DomainTools over its DomainTools and
        Screenshots Websites. ..................................................................................4

   C.   DomainTools filed this lawsuit seeking declaratory relief. .........................6

   D.   DomainTools personally served Smith and Consumer.net with the
        Complaint. ....................................................................................................7

III. ARGUMENT ........................................................................................................7

   A.   Smith subjected himself to personal jurisdiction in this District and the
        Court has jurisdiction over him. ...................................................................7

        1.   Smith purposefully directed activities at DomainTools in
             Washington. ........................................................................................8

        2.   DomainTools' claims arise out of Smith's conduct related to this
             forum. ................................................................................................10

        3.   Personal jurisdiction over Smith is reasonable. ..............................10

   B.   Service of process on Smith and Consumer.net, LLC was sufficient. ........12

   C.   Venue is proper in this District because this is where DomainTools engaged
        in all of the activity giving rise to Smith's claims. ...................................13

        1.   This is "a" district where a substantial part of the events or
             omissions occurred.  13

        2.   Venue is proper here because this is the District where DomainTools
             conducted all of the actions forming the basis for Smith's
             allegations. ........................................................................................14

   D.   DomainTools has stated a claim for relief on all of its causes of action. ....14

        1.   DomainTools has stated a claim for declaratory relief as to whether
             it has infringed Smith's alleged copyrights. ....................................14

        2.   DomainTools has stated a claim for declaratory relief as to whether
             DomainTools infringes Smith's rights under the ACPA. ................15

        3.   DomainTools has stated a claim for declaratory relief as to whether
             DomainTools' acquisition and use of Whois information relating to
             Smith's domain names is lawful. ....................................................17

   E.   DomainTools has standing to seek a judicial declaration that the
        DomainTools Mark was not obtained on the basis of a fraudulent affidavit.
        .........................................................................................................17

IV.  CONCLUSION ..................................................................................................18

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 2

NEWMAN | DU WORS

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 3

Newman | Du Wors

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

# I.    INTRODUCTION

Defendant Russ Smith[1] attacked DomainTools by sending it legal threats, a draft complaint he threatened to file in New Jersey federal court, and a draft petition he threatened to file to cancel the federal registration for the trademark DomainTools uses for its business. DomainTools filed this action to obtain a judicial declaration that it is not liable for Smith's allegations and that he lacks standing to challenge that trademark.

Smith is now attempting to avoid the conflict he started by claiming that DomainTools does not have the right to seek declaratory relief. But Smith created an actual controversy, and DomainTools is entitled to judicial resolution. The Court should decline Smith's request to dismiss any of its causes of action.

The Court should also decline Smith's request to dismiss this case for lack of personal jurisdiction. Smith purposefully directed his activities at Washington by using the DomainTools website to send legal threats in Seattle. Then Smith sent to DomainTools in Seattle a draft complaint and draft petition to cancel its trademark registration.

Smith acknowledges that he reviewed the DomainTools forum-selection clause, which specifies that DomainTools is located in Washington, before sending the draft complaint. More importantly, all of the issues in dispute arise from Smith's legal threats regarding DomainTools' conduct in Washington. This lawsuit has no connection with New Jersey except that is where Smith claims to reside.

Finally, Smith is wrong in claiming that he was not properly served. Rule 4 requires personal service and Smith was personally served.

DomainTools respectfully requests that the Court deny Smith's motion to dismiss ("Motion") and permit it to pursue its declaratory relief action in this District.

---

[1] As discussed below, the entity sued as Consumer.net, LLC appears to be an alter ego Smith uses in connection with his various online activities.

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 1

**Newman | Du Wors**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

## II.      FACTUAL BACKGROUND

**A.      DomainTools' Seattle-based online records archival business and website.**

DomainTools provides Internet domain-name research and monitoring services. DomainTools' services are available at its website located at http://www.domaintools.com/ (the "DomainTools Website"). (Complaint at ¶ 16.) DomainTools is based in Seattle, Washington. (Declaration of Tim Chen in Support of Response to Motion to Dismiss ("Chen Decl.") at ¶ 3.) DomainTools only has offices in Washington. (*Id.*) Most of the witnesses and documentary evidence that DomainTools is likely to use in this action are located in Seattle. (*Id.*)

DomainTools offers a broad range of online services that it has offered since 2000. (Complaint at ¶ 17.) And at least as early as May 2006, DomainTools has offered these services under the federally registered DOMAINTOOLS trademark, U.S. Reg. No. 4079040 (the "Mark") (*Id.* at ¶ 2.) DomainTools is the exclusive licensee of the Mark in the United States. (Chen Decl. at ¶ 4.)

The Internet Corporation for Assigned Names and Numbers ("ICANN") controls the domain-name system and sets regulations and policies for domain-name registration. (*Id.* at ¶ 17.) ICANN requires every registrant of an Internet domain name to provide contact information, which information is commonly referred to as "Whois" information. (*Id.* at ¶ 17.)

The Whois information provided by each domain name registrant is publicly available and accessible through domain-name registrars and other third parties. Any person can access Whois information over the Internet by using a common web browser. (*Id.* at ¶ 18.) Most Whois information available on the Internet is current, and is updated when domain-name registration information changes.

But DomainTools retains that publicly-available Whois information as a snapshot in time, and makes it available on a historical basis to its customers, without modification. (*Id.* at ¶ 19.) The DomainTools Website allows users to research current and historical domain-name registration records. (*Id.* at ¶ 19.) DomainTools customers

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 2

**NEWMAN | DU WORS**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

use its archive for a several purposes, including i) supporting law-enforcement investigations; ii) helping authorities and businesses track down online fraud; and iii) providing a historical resource for investigating domain-name ownership and usage. (*Id.* at ¶ 21.)

In connection with those records, DomainTools often provides historical images of the websites associated with particular domain names—called "Screenshots". (*Id.* at ¶ 22.) Screenshots are displayed in connection with domain name records and are also available at the website that DomainTools operates at http://www.screenshots.com/ (the "Screenshots Website"). (*Id.*)

As with the DomainTools Whois archive, the Screenshots provide a unique and valuable online resource for investigating historical domain-name use. The Screenshots service shows a historical domain-name record, together with a picture of the website appearing in connection with that domain name at a particular moment in time. (*Id.* at ¶ 23.) Similar services are provided by third parties. For example Archive.org captures and publishes historical website information. (*Id.*)

The Screenshots only include a static image of the home page of the website associated with each domain name at a moment in time. (*Id.* at ¶ 24.) Screenshots do not include any deeper pages linked from a website, nor do they contain source code. (*Id.*) Screenshots are displayed along with the date the image appeared on the Internet. (*Id.*)

Screenshots do not supersede the websites they depict because the images do not function as websites. Rather, each serves only as a historical record of a single website home page at a particular moment in time. (*Id.* at ¶ 25.) They offer no interactive-website benefits to a user, but instead benefit the public by providing access to historical information about the Internet. (*Id.*)

The terms of service on the DomainTools Website expressly provide for exclusive jurisdiction in Seattle:

> "By accessing, browsing, and/or using the website at www.domaintools.com or any other website owned or controlled by DomainTools, LLC, (collectively, the "Site"), including any service

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 3

**NEWMAN | DU WORS**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

provided on or via the Site (the "Services") you agree to be bound by these Terms of Service...

"You expressly agree to submit to the exclusive personal jurisdiction of the state and federal courts in the city of Seattle, Washington."

(DomainTools, LLC Terms of Service, Chen Decl. at ¶ 5, Ex. A, also available at

http://www.domaintools.com/about/terms-of-service/)

Similarly, the Screenshots Website's terms of service provide for exclusive

jurisdiction in Seattle:

"By accessing, browsing, and/or using the website at www.Screenshots.com (http://www.screenshots.com) or any other website owned or controlled by DomainTools, LLC ("DomainTools") (collectively, the "Site"), including any service provided on or via the Site (the "Services") you agree to be bound by these Terms of Service...

"You expressly agree to submit to the exclusive personal jurisdiction of the state and federal courts in the city of Seattle, Washington."

(Screenshots Terms of Service, Chen Decl. at ¶ 6, Ex. B, also available at

http://www.screenshots.com/terms-of-service/)

**B.    Defendant Smith threatened to sue DomainTools over its DomainTools and Screenshots Websites.**

On March 4, 2012, Smith used the "Submit a Ticket" feature on the DomainTools

Website, which permits Website users to send messages to DomainTools' support

technicians[2], to send DomainTools a threat regarding the DomainTools mark:

I noticed the registration for the Domain Tools trademarks. I own Domain-Tools.com and have been using it since 2000 for a variety of purposes. Your own submission to the USPTO (page 3, Google search for "domaintools") shows my network-tools.com site sandwiched between DomainTools.com and DomainTools.com twitter page. Obviously DomainTools.com knew I used Domain-Tools.com and knew about network-tools.com as I had a link to whois.sc for many years. However, DomainTools.com claimed to the USPTO that they had exclusive use and Ms. Prosser filed an affidavit that appears to make false claims. Let me know if you want to resolve this.

(*See* March 4, 2012 Help Ticket, Chen Decl. at ¶ 7, Ex. C.)

[2] The DomainTools Submit a Ticket system is available on the DomainTools Website at https://support.domaintools.com/index.php?_m=tickets&_a=submit&group=default

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 4

**NEWMAN | DU WORS**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

In that Help Ticket, Smith also alleged that DomainTools' screenshots.com website was infringing his copyright interest in his websites:

> The other issue is screenshots.com. this site shows screenshots of my web site without permission. While the screenshots are blurred out so the content is not entirely readable (I assume to avoid copyright claims) I noticed the DomainTools.com logo is superimposed on these images. I do not want my websites used in this way and I want my web sites removed from being displayed by screenshots.com. let me know how to get these sites removed.

(*Id.*)

On March 5, 2012, Smith used the DomainTools Website to send DomainTools another Help Ticket alleging that DomainTools had "taken" his intellectual property. (March 5, 2012 Help Ticket, Chen Decl. at ¶ 8, Ex. D.) In that correspondence, Smith confirmed that he had reviewed the terms of service (TOS) at both the DomainTools and Screenshots websites:

> It is also clear your posted TOS and privacy policies are not legitimate as they are "stock" policies that mostly do not have anything to do with the web site where it appears. It appears the only thing you did was try to set the jurisdiction for disputes. I do not agree to those terms as I am visiting the web site to stop the unauthorized distribution of my intellectual property.

(*Id.*)

On March 7, 2012, Smith again used the Submit a Ticket feature on the DomainTools website. This time he sent DomainTools a demand that it immediately remove from its database all of the Whois information associated with his domain names. (March 7, 2012 Help Ticket, Chen Decl. at ¶ 9, Ex. E.) Smith also claimed that he sent an infringement notice to a third-party Internet service provider, Level3 Communications, LLC regarding alleged copyright infringement by DomainTools:

> please remove the data within 24 hours and confirm it has been removed along with the associated screenshots that DomainTools.com has no permission to post either. A DMCA takedown notice has already been sent to Level3 Communications, LLC to request takedown of some of the infringing images related to the screenshots.

(*See* March 7, 2012 Help Ticket, Chen Decl. at ¶ 9, Ex. E.)

Then, on March 11, 2012, Smith sent DomainTools a draft complaint he

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 5

**NEWMAN | DU WORS**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

threatened to file on behalf of himself and defendant Consumer.net against DomainTools in federal court in New Jersey. (Complaint at ¶ 34, Ex. A.) In that complaint, Smith alleges that DomainTools infringed his copyright interest in "hundreds of websites" by displaying historical images of those websites on the DomainTools and Screenshot Websites. (*Id.* at ¶ 35.) That draft complaint claims that DomainTools unlawfully obtained and sells access to public Whois information relating to Smith's Internet domain names. (*Id.* at ¶ 36.) In his draft complaint, Smith seeks an injunction prohibiting DomainTools from displaying images of his websites and prohibiting DomainTools from selling historical public Whois registration information associated with domain names he owns. (*Id.* at ¶ 37.)

Also on March 11, 2012, Smith sent DomainTools a draft U.S. Patent and Trademark Office petition on behalf of himself and defendant Consumer.net LLC to cancel the federal registration of the Mark. (*Id.* at ¶ 38, Ex. B.) In that petition, Smith seeks cancellation of the federal registration for the Mark on the false basis that it is not entitled to protection and that it was obtained fraudulently. (*Id.* at ¶ 40.)

**C.   DomainTools filed this lawsuit seeking declaratory relief.**

DomainTools filed this action in response to Smith's threats in which it seeks a declaration that it does not infringe Smith's rights as he claims. Specifically, DomainTools seeks the following relief:

- that the Court issue a judgment declaring that DomainTools' creation and display of screenshots of the defendants' websites does not violate any of the defendants' rights under the Copyright Act. (Complaint at ¶ 50)

- that the Court issue a judgment declaring that DomainTools' registration and use of the domain name <domaintools.com> does not violate defendants' rights under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). (Complaint at ¶ 62)

- that the Court issue a judgment declaring that DomainTools' use and display of publicly-available Whois information Smith provided in connection with

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 6

**NEWMAN | DU WORS**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

1   domain name registrations is lawful. (*Id.* at ¶ 72)

2   • that the Court issue a judgment declaring that defendants and each of them lack

3   standing to file a petition for cancellation of the Mark. (*Id.* at ¶ 82)

4   • that the Court issue a judgment declaring that the Mark is enforceable and that

5   its registration is not subject to cancellation for the reasons claimed by

6   defendants. (*Id.* at ¶ 93)

**D.   DomainTools personally served Smith and Consumer.net with the Complaint.**

On April 5, 2012, Smith wrote to counsel for DomainTools and stated that he had

been served: "I acknowledge service as I obtained the documents off Pacer yesterday. I

understand the 21 days starts today." (Declaration of Derek Linke in Support of Response

to Motion to Dismiss at ¶ 2, Ex. A.) That same day, DomainTools personally served

Smith and Consumer.net, LLC with the summons and Complaint. (*See* Dkt. Nos. 15 and

16.) Smith wrote to counsel for DomainTools confirming that he had met with the

process server: "I already explained he was already here". (Linke Decl. at ¶ 2, Ex. A.)

### III.   ARGUMENT

**A.   Smith subjected himself to personal jurisdiction in this District and the Court has jurisdiction over him.**

The Court should not dismiss a case unless there is "lack of jurisdiction over the

person." Fed. R. Civ. P. 12(b)(2). In considering a motion to dismiss for personal

jurisdiction, courts in the Ninth Circuit "will draw reasonable inferences from the

complaint in favor of the plaintiff where personal jurisdiction is at stake, and will assume

credibility." *Fiore v. Walden*, 657 F.3d 838, 847 (9th Cir. 2011).

A court may assert its power over a nonresident defendant if it has general or

specific jurisdiction. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082,

1086 (9th Cir. 2000). Smith is subject to this Court's specific jurisdiction, which is

"personal jurisdiction premised on the particular circumstances underlying the lawsuit

sought to be litigated." *Fiore*, 657 F.3d at 845-846. The Ninth Circuit uses a three-part

test (the "*Schwarzenegger*" test) to determine whether a district court may exercise

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 7

**NEWMAN | DU WORS**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

1   specific jurisdiction over a nonresident defendant:

2   (1) The non-resident defendant must purposefully direct his activities or
3       consummate some transaction with the forum or resident thereof; or
        perform some act by which he purposefully avails himself of the
        privilege of conducting activities in the forum, thereby invoking the
4       benefits and protections of its laws;

5   (2) the claim must be one which arises out of or relates to the defendant's
        forum-related activities; and
6

7   (3) the exercise of jurisdiction must comport with fair play and substantial
        justice, i.e. it must be reasonable.

8   *Fiore*, 657 F.3d at 845-846 (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d

9   797, 802 (9th Cir. 2004) (citation and internal quotation marks omitted). Each part of the

10  *Schwarzenegger* test indicates that Smith is subject to personal jurisdiction in this District

11  in connection with this lawsuit. Furthermore, once DomainTools has satisfied the first

12  two parts, the burden shifts to Smith to show that the exercise of jurisdiction would be

13  unreasonable. *See Fiore*, 657 F. 3d at 854.

14      **1.      Smith purposefully directed activities at DomainTools in Washington.**

15          The first part of the *Schwarzenegger* test is satisfied where the defendant

16  purposefully directed activities at residents of a forum.[3] *Fiore*, 657 F.3d at 848.

17  Purposeful direction is analyzed under a three-part test  (the "*Calder*-effects" test) under

18  which a defendant allegedly must have:

19      (a) committed an intentional act;

20      (b) expressly aimed at the forum state;

21      (c) causing harm that the defendant knows is likely to be suffered in the
22          forum state.

23  *Fiore*, 657 F.3d at 848 (citing *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed.

24  2d 804 (1984)). Smith's actions satisfy each of the prongs of the *Calder*-effects test.

25          First, the "intentional act" prong refers to "an intent to perform an actual, physical

26  _____

27  [3] Purposeful direction is the standard in cases arising from tort; purposeful availment is
    the standard in cases arising from contract claims. *Fiore*, 657 F.3d at 848.

28

act in the real world, rather than an intent to accomplish a result or consequence of that act." *Schwarzenegger*, 374 F. 3d at 806. In *Bancroft*, the out-of-forum defendant sent a cease-and-desist letter to the plaintiff in California demanding that the plaintiff cease and desist its use of the domain name <masters.com>. 223 F.3d at 1088. The plaintiff filed a lawsuit in California federal court seeking a declaratory judgment of non-infringement under the Lanham Act. *Id*. The Bancroft court held that the defendant's act of sending the letter was an intentional act that satisfied the first prong of the *Calder*-effects test. *Id*. Similarly, Smith intentionally sent numerous writings to DomainTools, including legal threats he sent using DomainTools' own online website—which advised him that its use would subject him to jurisdiction here—and a draft complaint.

Second, actions are "expressly aimed at the forum state" where actions are taken outside the forum state for the purpose of affecting a particular forum resident. *Fiore*, 657 F.3d at 849. In *Fiore*, the out-of-state defendant knew that the plaintiff was in the forum state before taking the actions giving rise to the plaintiff's claims. *Id*. And in *Bancroft*, the Ninth Circuit found this prong was satisfied where the out-of-state defendant sent a letter to the plaintiff in California. 223 F.3d at 1088. Similarly, Smith knew that DomainTools was in Washington—he confirmed in writing that he had reviewed the DomainTools and Screenshots terms and conditions—prior to sending his draft complaint to DomainTools in Seattle. Smith's actions were aimed at Washington.

Finally, the third prong of the *Calder*-effects test is satisfied where "defendant's intentional act has 'foreseeable harms in the forum.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F. 3d 1124, 1131 (9th Cir. 2010). This prong was satisfied in *Bancroft* where the effects of the demand letter the defendant sent to the forum were likely to be felt by the plaintiff in the forum. 223 F. 3d at 1088. Smith's actions had a similar effect on DomainTools in Washington—he sent written demands and a draft complaint for infringement to DomainTools in Washington. Additionally, he threatened to seek cancellation of the DomainTools Mark, which would cause significant harm to DomainTools in Washington. It is foreseeable that these actions would harm

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 9

NEWMAN | DU WORS

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

DomainTools in this forum because this is where its business is located.

### 2.      DomainTools' claims arise out of Smith's conduct related to this forum.

The "arising out of" requirement of the *Schwarzenegger* test is met if "but for" the contacts between the defendant and the forum state, the cause of action would not have arisen. *Fiore*, 657 F.3d at 854 (quoting *Menken v. Emm*, 503 F. 3d 1050, 1058 (9th Cir. 2007)). In *Bancroft*, the Ninth Circuit held that the suit arose out of the defendant's forum-based contacts because "but for the [cease-and-desist] letter…it is clear that [the plaintiff] would have no need for a judicial declaration of its right to use masters.com." 223 F. 3d at 1088. Here, DomainTools would not have needed a judicial declaration "but for" Smith's contacts with this forum, *i.e.* the threats he sent to DomainTools in Washington. Therefore this case arises out of Smith's contacts with the forum.

### 3.      Personal jurisdiction over Smith is reasonable.

If DomainTools satisfies the first two prongs of the *Schwarzenegger* test, then the burden shifts to Smith to "present a compelling case that the exercise of jurisdiction would not be reasonable" in Washington. *Fiore*, 657 F. 3d at 854 (internal citations omitted). The Ninth Circuit has identified seven factors to consider in determining reasonableness:

> (a) the extent of the defendant's purposeful interjection in the forum state's affairs, (b) the burden on the defendant in defending in the forum, (c) the extent of the conflict with the sovereignty of the defendant's state, (d) the forum state's interest in adjudicating the dispute, (e) the most efficient judicial resolution of the controversy, (f) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (g) the existence of an alternative forum.

*Id.* at 854. No one factor is dispositive, and the district court must balance all seven. *Core-Vent Corp. v. Nobel Indus., A.B.*, 11 F.3d 1482, 1488 (9th Cir. 1993). The seven factors—only one of which Smith addresses in his Motion—indicate that it would be reasonable for this Court to exercise jurisdiction over Smith.

First, Smith's interjections into Washington are significant. Smith sent DomainTools a draft complaint he threatened to file that seeks injunctive relief regarding

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 10

**NEWMAN | DU WORS**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

1  the operation of DomainTools' Seattle-based business. He also threatened to seek

2  cancellation of the DomainTools Mark under which DomainTools offers its services from

3  Seattle. Those threats have a substantial impact on DomainTools in this District.

4         The second factor is burden on the defendant, and here the burden is minimal.

5  Smith has already registered for this Court's ECF system, and DomainTools will not

6  object to Smith participating in hearings telephonically. In contrast, the burden on

7  DomainTools to litigate in New Jersey would be substantial because DomainTools'

8  business, including its potential witnesses, are based in Seattle.

9         The third factor—the extent of conflict with the sovereignty of the defendant's

10  state—is not relevant. Smith's claims all appear to arise from questions of federal law.

11  Moreover, it is Washington, and not New Jersey, that has a strong interest in regulating

12  the conduct of Washington-based businesses.

13        Accordingly, the fourth factor—the interest of the forum state in adjudicating the

14  dispute—strongly indicates this dispute should proceed in Washington. Smith seeks an

15  injunction that would affect the operation of a Washington-state business and seeks to

16  cancel the trademark under which that business offers services.

17        The fifth factor concerns efficiency of the forum, which "turns primarily on the

18  location of witnesses and evidence." *Menken*, 503 F.3d at 1060-61. Nearly all of

19  DomainTools' witnesses and evidence are located in or available in Seattle. In contrast,

20  Smith has not identified any witnesses or documents located in New Jersey other than

21  himself.

22        The sixth factor—the importance of Washington to DomainTools' convenient and

23  effective relief—also weighs strongly in favor of exercising jurisdiction. This is the

24  District in which DomainTools' business is located and it would be far more convenient

25  for DomainTools to resolve Smith's allegations in this District than in New Jersey or

26  some other forum.

27        Finally, the seventh factor confirms that jurisdiction is appropriate—there is no

28  alternative forum for this dispute. Smith has not shown that DomainTools is subject to

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 11

**NEWMAN | DU WORS**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

1  jurisdiction in New Jersey—which it is not—and Smith's allegations arise from his

2  interactions with DomainTools' Washington-state business and website. This is the only

3  appropriate forum for this dispute.

4       Smith cannot satisfy his burden of showing that jurisdiction is unreasonable in this

5  forum, and the Court should deny his Motion.

6  **B.**  **Service of process on Smith and Consumer.net, LLC was sufficient.**

7       Smith asks the Court to find that DomainTools' service of process was insufficient

8  because it did not comply with the Washington long-arm statute, RCW § 4.28.185(4).

9  Specifically, Smith demands that DomainTools file an affidavit stating that he could not

10  be served within Washington as a prerequisite to serving him outside of Washington

11  (Motion at ¶ 6.) But Smith is wrong—DomainTools is allowed to effect service on him

12  either under Washington law or under Fed. R. Civ. P. 4(e)(2)(A), which provides for

13  "delivering a copy of the summons and complaint to the individual personally" and

14  which does not require compliance with the Washington law Smith cites.

15       Service of summons on an individual is governed by Fed. R. Civ. P. 4(e) which

16  provides that an individual "may be served in a judicial district of the United States by …

17  delivering a copy of the summons and of the complaint to the individual personally." Fed.

18  R. Civ. P. 4(e)(2)(A). Smith was personally served with the summons and complaint in

19  Ocean City, New Jersey on April 5, 2012. (*See* Dkt. No. 15.)

20       Smith testifies in support of his Motion that Consumer.net, LLC was a d/b/a for a

21  company called The Keyword Factory, LLC which has since dissolved. (Affidavit of

22  Russ Smith (Dkt. No. 12), at ¶ 3.) Accordingly, Consumer.net, LLC appears to be an alter

23  ego Smith uses for his online activities and not a distinct entity. Smith was personally

24  served with the summons and complaint for Consumer.net in Ocean City, New Jersey on

25  April 5, 2012. (*See* Dkt. No. 16.)

26       Smith cites no authority indicating that the Court must require service of process

27  in accordance with Washington law, which would directly contradict the standards in

28  Fed. R. Civ. P. 4, and the Court should decline to do so.

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 12

**NEWMAN | DU WORS**

1

2

**C.  Venue is proper in this District because this is where DomainTools engaged in all of the activity giving rise to Smith's claims.**

3      A court may transfer venue under Fed. R. Civ. P. 12(b)(3) only when venue is

4  improper. Venue is proper where "a substantial part of the events or omissions giving rise

5  to the claim occurred." 28 U.S.C. § 1391(b). To prevail on a 12(b)(3) motion, the plaintiff

6  only needs to make a prima facie showing of proper venue. *Rio Properties, Inc. v. Rio*

7  *Intern. Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). The substantiality requirement

8  exists to "preserve the element of fairness so that a defendant is not haled into a remote

9  district having no real relationship to the dispute." *Cottman Transmission Systems, Inc. v.*

10  *Martino*, 36 F.3d 291, 294 (3d Cir. 1994). This District is where a substantial part of the

11  dispute arose and venue is appropriate.

12

13

**1.  This is "a" district where a substantial part of the events or omissions occurred.**

14      Venue may be proper in multiple districts:

15

16

17

[T]he civil venue statute permits venue in multiple judicial districts as long as 'a substantial part' of the underlying events took place in those districts [and] does not, as a general matter, require the District Court to determine the best venue.

18  *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005) (internal quotations

19  omitted) (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)).

20      District courts in the Ninth Circuit endorse the Second Circuit's *Gulf Ins.*

21  interpretation of 28 U.S.C. 1391(b). *See e.g. Stewart v. Jos. A. Bank Clothiers, Inc.*, 2010

22  U.S. Dist. LEXIS 20730 (N.D. Cal. Feb. 10, 2010); *Trico Bancshares & Subsidiaries v.*

23  *Rothgerber Johnson & Lyons LLP*, 2009 U.S. Dist. LEXIS 96095 (E.D. Cal. Oct. 14,

24  2009); *Ibrahim v. Chertoff*, 2007 U.S. Dist. LEXIS 38352 (S.D. Cal. May 24, 2007). This

25  Court should also adopt the *Gulf Ins.* standard and decline to transfer venue because this

26  forum is an appropriate venue.

27

28

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 13

NEWMAN | DU WORS

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

1

2   **2.      Venue is proper here because this is the District where DomainTools conducted all of the actions forming the basis for Smith's allegations.**

3       In the Ninth Circuit, a substantial part of the events giving rise to a claim occur in

4   a district where "at least one of the harms" suffered by the plaintiff occurred in that

5   district." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001). Venue is

6   proper here under 28 U.S.C. § 1391(b) because Smith threatened DomainTools at its

7   principal place of business in Washington and therefore substantially all of the claims

8   arise from events and omissions here.

9   **D.      DomainTools has stated a claim for relief on all of its causes of action.**

10      The Declaratory Judgment Act provides that "in a case of actual controversy

11  within its jurisdiction…any court of the United States…may declare the rights and other

12  legal relations of any party seeking such declaration, whether or not further relief is or

13  could be sought." 28 U.S.C. § 2201(a). An "actual controversy" exists within the

14  meaning of the Declaratory Judgment Act when the dispute is "definite and concrete,

15  touching the legal relations of parties having adverse legal interests." *MedImmune, Inc. v.*

16  *Genentech, Inc.*, 549 U.S. 118, 126-27, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007). And the

17  dispute must be "real and substantial and admit of specific relief through a decree of a

18  conclusive character, as distinguished from an opinion advising what the law would be

19  upon a hypothetical set of facts." *Id*. The primary consideration is "whether the facts

20  alleged, under all the circumstances, show that there is a substantial controversy, between

21  parties having adverse legal interests, of sufficient immediacy and reality to warrant the

22  issuance of a declaratory judgment." *Id*.

23      Smith's threats have created an actual controversy for which DomainTools is

24  entitled to seek relief under the Declaratory Judgment Act.

25

26  **1.      DomainTools has stated a claim for declaratory relief as to whether it has infringed Smith's alleged copyrights.**

27      Smith has created an actual controversy as to whether DomainTools infringes his

28  alleged copyrights. For a copyright action in the Ninth Circuit, a declaratory judgment

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 14

**NEWMAN | DU WORS**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

1  plaintiff must (1) demonstrate a "real and reasonable" apprehension that she will be

2  subject to liability if she continues to manufacture her product that (2) the defendant

3  caused by its actions. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,

4  1555-56 (9th Cir. 1990). A court applies these principles "with a flexibility that is

5  oriented to the reasonable perceptions of the plaintiff." *Chesebrough-Pond's, Inc. v.*

6  *Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir. 1982).

7        Smith's threats—which included sending a draft complaint for copyright

8  infringement—caused a "real and reasonable" apprehension that DomainTools would be

9  subject to copyright liability if it continued to offer its Screenshots.com service. Congress

10 passed the Declaratory Judgment Act for precisely this situation—to give DomainTools

11 an early opportunity to resolve federal issues to avoid "the threat of impending

12 litigation." *Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166, 1172 (9th Cir.

13 2002) (citing *Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996)).

14       Smith demands that the Court dismiss DomainTools' Complaint because it does

15 not identify specific copyrights for which it seeks a judicial declaration. But it is Smith,

16 and not DomainTools, who initiated this controversy, and the bare allegations in his draft

17 complaint do not prevent DomainTools from seeking a declaration that it is not liable.

18 *See Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir.

19 1986) ("If…the declaratory judgment defendant could have brought a coercive action in

20 federal court to enforce its rights," jurisdiction exists for declaratory relief.) Smith

21 threatened a copyright-infringement action, and now the burden is on him to identify the

22 copyrights at issue.

23
24         **2.**      **DomainTools has stated a claim for declaratory relief as to whether DomainTools infringes Smith's rights under the ACPA.**

25       Smith's threats have created a reasonable apprehension that DomainTools

26 infringes his rights under the ACPA, 15 U.S.C. 1125(d). In the Ninth Circuit, a

27 declaratory judgment action for non-infringement presents the requisite "case or

28 controversy" if the plaintiff "has a real and reasonable apprehension that [it] with be

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 15

**NEWMAN | DU WORS**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

1  subject to liability if [it] continues to manufacture its product." *Rhoades v. Avon Prods.,*
2  *Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007) (quoting *Hal Roach Studios*, 896 F.2d at 1555-
3  56).

4       It does not matter that Smith has not yet expressly threatened ACPA litigation
5  because in the Ninth Circuit, "concrete threats of litigation are not required to
6  demonstrate a reasonable apprehension of an infringement suit." *Rhoades*, 504 F.3d at
7  1158. Under the Ninth Circuit's "flexible approach," the test focuses on "the position and
8  perceptions" of the declaratory judgment plaintiff and not on "specific acts or intentions"
9  of the declaratory judgment defendant. *Id.* at 1157-58 (quoting *Chesebrough-Pond's*, 666
10  F. 2d at 396).

11       Smith's threats created a real and reasonable apprehension that DomainTools risks
12  liability under the ACPA in connection with its use of its <domaintools.com> domain
13  name. A claim exists under the ACPA where a plaintiff establishes (1) a valid trademark
14  that is entitled to protection; (2) the mark is distinctive or famous; (3) the defendant's
15  domain name is identical or confusingly similar to, or in the case of famous marks,
16  dilutive of, the [plaintiff's] mark; and (4) the defendant used, registered, or trafficked in
17  the domain name (5) with a bad faith intent to profit. *Bosley Medical Institute, Inc. v.*
18  *Kremer*, 403 F. 3d 672, 681 (9th Cir. 2005).

19       Smith's draft cancellation petition (Complaint, Ex. B) alleges that he claims to
20  have acquired trademark rights in the term "domaintools" for use before DomainTools
21  began using the Mark and the domain name <domaintools.com> in connection with its
22  business. So it is irrelevant that, as Smith claims in his Motion, "Russ Smith has never
23  raised an issue concerning the Anticybersquatting Consumer Protection Act involving
24  DomainTools." (Motion at ¶ 13.) Smith's threats have provided DomainTools with
25  reasonable apprehension regarding Smith's rights under the ACPA and the Court should
26  permit it to seek relief under the Declaratory Judgment Act.

27

28

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 16

**NEWMAN | DU WORS**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

1

2

3

**3.    DomainTools has stated a claim for declaratory relief as to whether DomainTools' acquisition and use of Whois information relating to Smith's domain names is lawful.**

4    Smith has repeatedly claimed that DomainTools' acquisition and use of Whois

5  information relating to his domain names is unlawful. Smith made this allegation in legal

6  threats he sent to DomainTools using its website, and he made this allegation in the draft

7  complaint he threatened to file. The Declaratory Judgment Act "was enacted to afford an

8  added remedy to one who is uncertain of his rights and who desires an early adjudication

9  without having to wait until he is sued by his adversary." *Levin Metals*, 799 F.2d at 1315

10  (citing 28 U.S.C. § 2201). Smith's failure to substantiate his legal threats with supporting

11  legal authority does not mean there is not an actual controversy between Smith and

12  DomainTools—it just means Smith's claims are meritless. His failure to identify specific

13  support for his allegations should not preclude DomainTools from seeking declaratory

14  relief and under the Declaratory Judgment Act. DomainTools is not required to wait for

15  Smith to sue it to resolve his threats.

16

17

**E.    DomainTools has standing to seek a judicial declaration that the DomainTools Mark was not obtained on the basis of a fraudulent affidavit.**

18    Smith's threats regarding the Mark have created an actual controversy between

19  DomainTools and Smith. As the exclusive licensee of the Mark in the United States,

20  DomainTools has legal rights associated with the Mark. For example, in the Ninth

21  Circuit, a plaintiff has standing to enforce a mark if it has "a cognizable interest in the

22  allegedly infringed trademark." *See Halicki Films, LLC v. Sanderson Sales & Mktg.*, 547

23  F.3d 1213, 1225 (9th Cir. 2008). Smith threatens to petition for a cancellation of the

24  Mark on the basis that the Mark is not entitled to protection and that it was obtained on

25  the basis of a fraudulent affidavit during application. (Complaint, Ex. B.) If the Mark is

26  invalidated as Smith requests in his draft cancellation petition, DomainTools will no

27  longer be able to use the Mark or enforce it.

28    Smith's threats regarding the Mark have created a "substantial controversy,

RESPONSE TO MOTION TO DISMISS
[Case No. 2:12-cv-00498-MJP] - 17

**NEWMAN | DU WORS**

1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800

between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 126-127 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)). DomainTools has standing to seek a judicial declaration as to Smith's lack of standing to challenge the Mark, that the Mark is not invalid, and that the Mark was not obtained on the basis of a fraudulent affidavit.

## IV.   CONCLUSION

Smith's Motion should be denied. Smith's legal threats, demands, and draft complaint and cancellation petition have created an actual controversy for which DomainTools is entitled to seek declaratory relief regarding its rights. And because Smith directed those threats at DomainTools in Washington using the DomainTools website which specifies Seattle as the exclusive forum for any disputes, he is subject to jurisdiction here and venue is appropriate. Smith has been served, and the Court should deny his Motion and direct him to answer DomainTools' Complaint.

Dated this 14th day of May, 2012.

Respectfully Submitted,

**NEWMAN DU WORS LLP**

By:   s/ Derek Linke
      Derek A. Newman, WSBA No. 26967
      Derek Linke, WSBA No. 38314

      Attorneys for Plaintiff
      DOMAINTOOLS, LLC