**Russ Smith,** *pro se*
**PO Box 1860**
**Ocean City, NJ 08226**
**609-385-8966**
**smith@help.org**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| DomainTools, LLC | **Civil Action No.** |
| Plaintiff, | **2-12-Cv-00498-MJP** |
| v. | **Document Electronically Filed** |
| Russ Smith, *pro se* and Consumer.net LLC | **Motion for Sanctions** |
| Defendants | **Returnable August 4, 2012** |

## Table of Contents

Summary ................................................................. 2
Background ............................................................ 2
Lawsuit Filed With Improper Intent .............................. 3
False Representations to the Court ............................ 6
Relief Requested ..................................................... 7

## Table of Authorities

Schwartz v. Millon. Air, Inc., 341 F. 3d 1220, 1225
    (11 Cir. 2003) ..................................................... 7
Fed R. Civ P 11(b)(1),(3) ............................................ 2
Fed R. Civ P 11(c)(5)(B) ............................................. 7
Anti Cybersquatter Protection Act
    (ACPA) [15 U.S.C. § 1125(d)] ............................. 4, 5, 6
15 U.S.C. § 1125(d)(1)(A) .......................................... 5

1

## Summary

1. On August 4, 2012 in the US District Court defendant Russ Smith seeks an order for sanctions pursuant to Fed R. Civ P 11(b)(1),(3).

2. An Affidavit of Russ Smith in Support of Motion for Sanctions ("Smith Affidavit") is being filed with this motion.

3. The Complaint contains false facts designed to mislead the court to set venue in Washington. A few days after this case was filed the attorney directing this litigation for Domain Tools publicly posted his legal "strategy" on an Internet blog.[1] This "strategy" (which he describes as a "trick") included statements such as:

   *"Select the mutual jurisdiction to be [far away from defendant] .... file an action seeking damages. Serve it, claim damages not to exceed $10,000 and wait for a default. Then try to enforce the default. The reason for the damage limit is to force them into a situation of spending more than $10,000 to defend in [the jurisdiction far from plaintiff] or default.*

   *In cases like this it is easy ... [but] ... this trick could backfire with an [Anti Cybersquatter Protection Act] claim ..."*

## Background

4. Attorneys Paul Keating, John Berryhill, and Derek Newman are known within the domain name industry to be attorneys who often represent domain owners in domain disputes, domain transactions, etc. They often appear, sometimes together, on industry panel discussions at trade shows about domain names.

---

[1] These Internet blog posts are attorney advertisements designed to generate more business for their law practice.

2

They also often write Internet "blog" articles and comment on articles written by others[2].

   a. Derek Newman is the lead counsel for Domain Tools in this case,

   b. Paul Keating is the managing director of Euro Convergence SARL[3] (the parent company of Domain Tools) and a member of the investment board controlling Domain Tools[4]. He is also directing the Newman DuWors law firm in this litigation.[5]

   c. John Berryhill represents Euro Convergence SARL, directs copyright complaints about the web sites http://ScreenShots.com and http://DomainTools.com to his office in Pennsylvania[6], and filed the trademark applications for "DOMAIN TOOLS" at the US Patent and Trademark Office on behalf of Euro Convergence SARL.[7]

**Lawsuit Filed With Improper Intent**

5. Just eight days after this lawsuit was filed Paul Keating made this Internet posting to advertised his law firm services:[8] http://www.thedomains.com/2012/05/30/berryhill-gets-a-finding-of-reverse-domain-name-hijacking-defending-a-udrp-on-elk-com/

---

[2]Smith Affidavit paragraphs 2, 3, 4, 10, and 11 and Exhibits A-10 and A-11.

[3]Smith Affidavit paragraph 4 and Exhibit A-4.

[4]Smith Affidavit paragraph 5 and Exhibit A-5.

[5]Smith Affidavit paragraph 7 and Exhibit A-7.

[6]Smith Affidavit paragraph 8 and Exhibit A-2.
[7]Exhibit A-4.

[8]Smith Affidavit at Paragraph 11, Exhibit A-11.

3

Paul Keating states:

> **Steve – "where's the penalty?"**
>
> *Actually, Francois could file an action seeking damages for interference and a number of other claims. It is likely that the Complainant selected the Mutual Jurisdiction to be Arizona (Go Daddy). The Mutual Jurisdiction provision is an agreement to jurisdiction in any action "concerning the dispute". So, file an action seeking damages, serve it, claim damages not to exceed $10,000 and wait for a default. Then try to enforce the default. The reason for the damage limit is to force them into a situation of spending more than $10,000 to defend in AZ or default.*
>
> *In cases like these it is easy and the likelihood of a counter-claim is very low. In others this trick could backfire with an ACPA [Anti Cybersquatter Protection Act] claim being made by the asserting trademark holder.*
>
> *It would be nice if more domainers would go to the trouble of pursuing such claims.*
>
> **PRK**

John Berryhill then comments on a portion of Mr. Keating's posting a few days later:

> *"It would be nice if more domainers would go to the trouble of pursuing such claims."*
>
> **Amen**

6. This strategy, or "trick" as Mr. Keating characterizes it, is exactly what is happening in this case:

4

a. Jurisdiction was chosen far from defendants. In this case false information is in the complaint for the purpose of setting jurisdiction in Washington State when Defendants were in New Jersey. These claims were repeated in the Domain Tools Response to the Motion to Dismiss (such as in Section I),

b. The complaint includes a request for declaratory relief under the Anticybersquatter Protection Act (ACPA) even though no trademark claim has been made. The Complaint at paragraphs 53 – 54 references 15 U.S.C. § 1125(d)(1)(A) that states "A person shall be liable in a civil action by the owner of a mark..." When the fact that no trademark claim was ever made. When this was brought to their attention Domain Tools went on to claim in their Response to the Motion to Dismiss in Section III(D)(2):

> ***"Smith's draft cancellation petition (Complaint, Ex. B) alleges that he claims to have acquired trademark rights in the term 'domaintools'..."***

However, Domain Tools never actually point to any specific trademark claim indicating the deception was intentional and systematic.

c. When a default did not happen Domain Tools tried pulling a number of "stunts" to try to get a default concerning Rule 26 requirements. This includes disruptions of the Rule 26 conference that led to the court teleconference to issue a ruling[9] and claims to the Court that Russ Smith refused to

---

[9] A complaint has been filed with the Washington State Bar Association.

5

continue the conference. Since then Domain Tools has tried to rescind permission to send documents electronically in further efforts to obtain a default.

7. The ACPA claim is a clear "marker" that the "trick" posted on the Internet blog advertisement for attorney services is exactly what is being done here. This is systematic effort by Domain Tools to skirt US law by utilizing an offshore entity[10] while utilizing the resources of the US Courts. Defendant's Third Motion to Dismiss (Document 31) addresses the issue of the invalid Corporate Disclosure Statement filed with the Court which was done in their effort to keep their offshore shell parent company, Euro Convergence SARL, out of this case.

## False Representations to the Court

8. Domain Tools claimed the "draft complaints" were sent to Domain tools as a result of visiting http://DomainTools.com.[11] In fact the documents were e-mailed to attorney John Berryhill[12] (at his request) who is Pennsylvania and who represents Euro Convergence SARL.[13] These false statements were made in order

---

[10] On information and belief the address of Euro Convergence SARL, the parent company of Domain Tools, is utilized by a number of companies including those offering "offshore investments" as well as companies that register thousands of domain names some of which are "typos" of well known web sites (for example, craigslkst.com, wikipedi.com, and fgoogl.com).

[11] Such as Complaint at paragraph 11 – 12. Also Complaint at paragraph 6, 34, 38. Declaration of Tim Chen (Document 18) Paragraphs 7 – 9 and Exhibits C, D, and E.

[12] Smith Affidavit at Paragraphs 8 - 9 and Exhibits A-8 and A-9.

[13] Smith Affidavit at Paragraphs 8 and Exhibit A-2.

6

to make an argument that defendants were bound under the Washington State longarm statute in order to file a suit far from New Jersey.

## Relief Requested

9. Defendants and their counsel have engaged in unreasonable and vexatious conduct and have "willfully abuse[d] the judicial process by conduct tantamount to bad faith." Schwartz v. Millon. Air, Inc., 341 F. 3d 1220, 1225 (11 Cir. 2003).

10. Plaintiff requests the following sanctions be considered after a show-cause order is issued and their reply is reviewed pursuant to Fed R. Civ P 11(c)(5)(B):

    a. Dismiss this case in its entirety with prejudice,[14]

    b. Issue a monetary judgment to Russ Smith to deter Domain Tools from further harassing him and compensate Smith for monetary losses caused by responding to this Complaint,[15] and

    c. Require Domain Tools, Euro Convergence SARL (if they are added as an involuntary plaintiff) and the Newman DuWors law firm shall be required to seek permission from the US

---

[14] This should be considered only after the court rules on a motion to compel Euro Convergence to be an involuntary Plaintiff (which is expected to filed shortly). It appears this case fits the definition of a "proper case" as the trademark issue are essentially in the name of Euro Convergence. Also, Euro Convergence takes credit for publishing the images at http://ScreenShots.com and directs complaints to their attorney in Pennsylvania. Further, based on the legal strategies and "tricks" posted by Paul Keating, there is high probability that defendant Russ Smith will face duplicate litigation from Euro Convergence in the future if the matter is not dismissed in its entirety here.

[15] It should be noted that based on the records from AboutUs v Crockett, et, al, 2:07-cv-01175, Document 6 it appears the nominal demand of the Newman DuWors law firm in similar cases is $100,000.00.

federal courts before filing any further lawsuits to deter them from filing more lawsuits for an improper purpose.

*Russ Smith, pro se*

July 8, 2012

Russ Smith, pro se, PO Box 1860, Ocean City, NJ 08226 smith@help.org 609-385-8966